IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF NORTH CAROLINA

| | |
|---|---|
| MICHAEL CROWELL, <br><br> *Plaintiff,* <br><br> vs. <br><br> STATE OF NORTH CAROLINA; ROY COOPER, Governor of North Carolina, *in his official capacity only*; BIPARTISAN STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT; CHAIR, BIPARTISAN STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT, *in official capacity only*; MEMBERS, BIPARTISAN STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT, *in their official capacity only*; <br><br> *Defendants.* | Case No. 1:17-cv-00515-WO-JEP |

## **MEMORANDUM IN SUPPORT OF MOTION FOR STAY**

Defendant-Intervenors Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives ("Defendants"), pursuant to Local Rule 7.2, hereby serve this Memorandum in support of Defendants' Motion for Stay, Dkt. 47.

## NATURE OF THE MATTER

Plaintiff seeks to amend his Complaint to update his challenge to the constitutionality of the Bipartisan State Board of Elections and Ethics Enforcement (the "Board"). While Defendants acknowledge that it may eventually be appropriate for Plaintiff to amend his Complaint to capture the significant changes to the structure of the Board that have been implemented since this action was filed in June 2017, Defendants submit that any such amendment is premature. The current structure of the Board is the subject of a lawsuit between Governor Roy Cooper and Defendants pending before a three-judge panel in Wake County Superior Court, Case No. 18 CVS 3348 (the "Second State Court Action"), the outcome of which could render Plaintiff's claims (as set forth in the proposed Amended Complaint) moot or, at least, have an impact on the scope of Plaintiff's claims. Additionally, a proposed constitutional amendment that would establish the Bipartisan State Board of Ethics and Elections Enforcement (the "New Board") in the Constitution will be included on the November 2018 ballot for North Carolina voters to ratify or reject. If the amendment passes, the Board will be replaced by the New Board, and Plaintiff's claims will be affected. Therefore, Defendants oppose any amendment of Plaintiff's claims at this time and seek a stay of this action

2

Case 1:17-cv-00515-WO-JEP   Document 48   Filed 09/10/18   Page 2 of 17

pending a final resolution in the Second State Court Action and/or passage of the constitutional amendment.

## STATEMENT OF THE FACTS

### A. Session Law 2017-6

In his Complaint, Plaintiff, a North Carolina citizen who is registered as an unaffiliated voter, challenged the constitutionality of Session Law 2017-6, which reorganized the State Board of Elections (the "Board of Elections") and the State Ethics Commission (the "Ethics Commission") into the Board. Session Law 2017-6 created an eight-member body. *See* 2017 N.C. Sess. Laws 6. All eight members of the Board were to be appointed by the Governor, four from each of the two largest political parties in the State, which are currently the Democratic and Republican parties, from lists of six nominees submitted by the party chairs. *Id.* The Board was to appoint the members of the county boards of elections, with two members from each of the two major political parties. *Id.*

Governor Roy Cooper, in his official capacity, filed suit against Defendants, Wake County Superior Court Case No. 17 CVS 5084 (the "First State Court Action") raising a facial constitutional challenge to Session Law 2017-6 under the North Carolina Constitution and seeking to enjoin the enforcement of the Session Law. (*See* Dkt. 9-1). On June 1, 2017, a specially-

3

convened three-judge Superior Court panel unanimously dismissed Governor Cooper's complaint for lack of subject matter jurisdiction. (Dkt. 9-3). On July 19, 2017, the North Carolina Supreme Court granted Governor Cooper's petition for discretionary review prior to the Court of Appeals' review. (Dkt. 9-6). On July 20, 2017, the North Carolina Supreme Court entered a special order halting further enforcement and implementation of Session Law 2017-6 while the state constitutional challenge was under review. *See* Dkt 26-1, 20 July 2017 Order, *Cooper v. Berger, et. al.*, 52 PA 17-2. The Supreme Court heard argument in August 2017 and certified a request to the three-judge panel that it "enter a new order within 60 days" explaining its prior determination that it lacked jurisdiction and addressing the merits of the case. *See* Dkt. 26-2, 1 September Order, *Cooper v. Berger, et al.*, 52 PA 17-2. On October 31, 2017, the three-judge panel entered its Order providing findings of fact and conclusions of law supporting its decision to dismiss the action pursuant to lack of subject matter jurisdiction and also entered a unanimous indicative ruling that Session Law 2017-6 was not unconstitutional. *See* Exhibit 1, October 31, 2017 Order. That October 31, 2017 Order was certified to the Supreme Court.

On January 26, 2018, the Supreme Court, in a 4-3 decision, issued its opinion reversing and remanding the trial court's June 1, 2017 order. *See*

*Cooper v. Berger*, 370 N.C. 392, 422, 809 S.E.2d 98, 117 (2018). The Supreme Court expressly found that the General Assembly's decision to merge the Board of Elections and Ethics Commission into the Board was a constitutional exercise of its authority. *Id.* at 409, 809 S.E.2d at 108. While the Supreme Court found provisions of Session Law 2017-6 relating to the membership of and appointment to the Board unconstitutional, it did not find unconstitutional provisions regarding the selection of the Executive Director of the Bipartisan Board, rotation of the office of chair of the Bipartisan Board among political parties, and the composition of the county boards of elections. *Id.* at 420-21, 809 S.E.2d at 115-16.

The case was remanded to the trial court with instructions from the Supreme Court to conduct further proceedings not inconsistent with the Supreme Court's opinion regarding the membership of and appointments to the Board, including entry of a final judgment. *Id.* at 422, 809 S.E.2d at 116. On March 5, 2018, the trial court entered its Final Judgment declaring N.C. Gen. Stat. § 163A-2 void and of no effect and permanently enjoining § 163A-2. *See* Exhibit 2, Final Judgment.

On March 6, 2018, Governor Cooper filed his Motion to Enforce Mandate, requesting that the Supreme Court declare Sections 3 through 22 of Session Law 2017-6 void and of no effect. *See* Exhibit 3, Motion to Enforce Mandate.

On March 13, 2018, the Supreme Court entered its per curiam Order denying the Motion to Enforce Mandate. *See* Exhibit 4, March 13, 2018 Order.

### B. Session Law 2018-2

House Bill 90, which contains material amendments to § 163A-2, was ratified and presented to the Governor for his action on February 13, 2018. *See* 2018 N.C. Sess. Laws 2. On March 13, 2018, Governor Cooper filed his Verified Complaint challenging Part VIII of House Bill 90 ("House Bill 90"); House Bill 90 together with the "unamended portions" of Session Law 2017-6; Sections 7.(h) and 17 of Session Law 2017-6, separately; and the Rotating Chair Provisions of House Bill 90 and Session Law 2017-6 as violative of the Separation of Powers Clause and the Executive Power Clause (Article I, Section 6 and Article III, Section 1 and 5(4), respectively) of the North Carolina Constitution. Thereafter, on March 16, 2018, House Bill 90 became Session Law 2018-2 when the Governor neither approved nor returned House Bill 90 to the General Assembly with his objections in the time allowed by law. (*Id.* at ¶ 97.) *See also* N.C. Const. Art. II, Sec. 2(7) (after bill is presented to the Governor, it shall become a law unless, within 30 days after adjournment for more than 30 days, it is returned by the Governor with objections and veto message).

Session Law 2018-2 specifically states that the legislative intent of the General Assembly in enacting Session Law 2017-6 and in establishing the Board "was to continue the practice of having an independent, quasi-judicial body for elections and ethics enforcement for the State and [to] consolidate those bodies under a single entity." 2018 N.C. Sess. Laws 2. Session Law 2018-2 is designed "to implement the decision of the North Carolina Supreme Court on January 26, 2018, in *Cooper v. Berger* . . . ." *Id.* Under the Session Law 2018-2, the Board consists of nine members. *Id.* The Governor is to appoint four members from each of the State's two largest political parties (i.e., the Democratic and Republican parties) from lists of six nominees provided to the Governor by the State party chairs for the two parties. *Id.* The ninth member is not to be affiliated with either the Democratic or Republican party but is to be appointed by the Governor from a list of two nominees submitted by the other eight members of the Board. *Id.* Session Law 2018-2 establishes that members of the Board may be removed by the Governor in his discretion. *Id.*

The Governor has appointed all nine members to the Board. *See, e.g.,* [https://www.usnews.com/news/best-states/north-carolina/articles/2018-03-21/north-carolina-election-board-picks-2-to-become-ninth-member.](https://www.usnews.com/news/best-states/north-carolina/articles/2018-03-21/north-carolina-election-board-picks-2-to-become-ninth-member.)

Defendants' Motion to Dismiss and the Governor's Motion for Summary Judgment regarding Session Law 2018-2 was argued before the three-judge

7

panel Superior Court on July 26, 2018, but the trial court has not yet entered an order on those motions.

### C. Proposed Constitutional Amendment under Session Law 2018-133

Session Law 2018-133[1] proposes a constitutional amendment that would establish the New Board in Article VI (Suffrage and Eligibility to Office) of the Constitution. *See* 2018 N.C. Sess. Laws 133, § 1. As proposed, the New Board would consist of eight members, no more than four of whom may be registered with the same political affiliation, to be appointed by the Governor upon the recommendation of the leaders of the two House and Senate political party caucuses with the most members. *Id*. The Governor would appoint no more than two members from the recommendation of each leader. *Id*. The proposed amendment will appear on the November 2018 ballot for consideration by the voters of North Carolina. If the amendment is approved by the voters, the New

---

[1] The proposed constitutional amendment set forth in Session Law 2018-117 and referenced in Plaintiff's proposed Amended Complaint will not be on the November 2018 ballot given that it was enjoined by a three-judge Superior Court panel in challenges to the ballot language for the proposed amendment brought by Governor Cooper (Wake County Superior Court Case No. 18 CVS 9805) and the North Carolina State Conference of the National Association for the Advancement of Colored People and Clean Air Carolina (Wake County Superior Court Case No. 18 CVS 9806). *See* Exhibit 5, Order on Injunctive Relief.

8

Board will be formed effective March 1, 2019. *See* 2018 N.C. Sess. Laws 133, § 4.

### D. Plaintiff's Legal Challenge

On June 7, 2017, Plaintiff initiated this action, challenging Session Law 2017-6 as violative of the First and Fourteenth Amendments of the United States Constitution as made enforceable through 42 U.S.C. § 1983. (Dkt. 1).

On March 9, 2018, all parties to this action joined in the Joint Motion for Stay, Dkt. 40, requesting that this Court stay its proceedings until the North Carolina Supreme Court issued a final decision in the First State Court Action. The parties acknowledged that "[u]ntil the issues currently pending in [the First State Court Action] are resolved, neither the Parties nor this Court can know for certain the impact of that case on the composition of the [Board]." (*See* Dkt. 40 at ¶ 8.) On March 14, 2018, the request for stay was granted. Dkt. 41.

Since the request for stay was made, the Supreme Court ruled in the First State Court Action; Session Law 2018-2 was ratified, creating a new structure for the Board; the Governor brought an action to challenge Session Law 2018-2; the Governor appointed all nine members to the Board, including an unaffiliated voter; and the General Assembly has proposed a constitutional

amendment that would create the New Board and that will be before the voters on the November 2018 ballot.

## QUESTIONS PRESENTED

Should a stay be granted (or the prior stay continued) until a final judgment in the Second State Court Action and/or the passage of the constitutional amendment proposed by Session Law 2018-133?

## ARGUMENTS AND AUTHORITIES

Plaintiff seeks to amend his Complaint to continue his challenge to the structure of the Board and the county boards of election, specifically arguing that unaffiliated voters are excluded from "any meaningful participation in election administration in North Carolina." (Dkt. 44 at ¶ 10.) However, given the Governor's challenge to the current Board, the current Board could be found unconstitutional. Moreover, if the voters approve the proposed amendment that will appear on the November 2018 ballot, the current Board will be replaced by the New Board effective March 2019. Thus, Plaintiff's request to amend his Complaint is premature because the board structure which Plaintiff seeks to challenge is not settled. Rather than allow Plaintiff to amend his Complaint at this time, the Court should stay this proceeding pending final resolution of the Second State Court Action and the November 2018 election.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of

10

time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). As recognized by this Court,

> [w]hen considering whether to stay a federal proceeding during the pendency of a similar state court action, the Fourth Circuit has used both the *Landis* doctrine (*see Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)) and the *Colorado River* doctrine (*see Cox v. Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd.*, 669 F.2d 940, 942–43 (4th Cir. 1982)).

*Henry v. N. Carolina Acupuncture Licensing Bd.*, No. 1:15CV831, 2017 WL 401234, at *5 (M.D.N.C. Jan. 30, 2017). Under the current circumstances, a stay is appropriate under either doctrine.

### A. The *Colorado River* Doctrine

As recognized by the United States Supreme Court, although the doctrine of abstention, "under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quotations and citations omitted), it is appropriate in the current circumstances. Abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Id.* at 814. This is the exact situation before this Court. Plaintiff seeks to amend his Complaint

11

to challenge Session Law 2018-2 under the federal Constitution at the same time the Governor is challenging Session Law 2018-2 under the State Constitution. If the Governor is successful in his challenge, Plaintiff's claims will be rendered moot or, at least, will be significantly affected. Thus, a stay is appropriate. *North v. Budig*, 637 F.2d 246, 249 (4th Cir. 1981) ("The federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law questions since a decision by the local tribunals could afford North an adequate remedy and thus preclude the possibility that the federal court might unnecessarily decide a constitutional issue.").

### B. The *Landis* Doctrine

Power to grant a discretionary stay pending state court proceedings under the *Landis* doctrine is well recognized and calls for the application of a balancing test:

> Proper use of [the Court's inherent power to stay proceedings] requires the court to exercise its judgment "to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir.2013) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir.1977)). Courts have identified these various factors to include the interests of judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay. See, e.g., *White v. Ally Fin., Inc.*, 969 F.Supp.2d 451, 462 (S.D.W.Va.2013).

*Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*, 141 F. Supp. 3d 428, 452 (M.D.N.C. 2015) (applying the *Landis* balancing test). Here, the balance of factors weighs in favor of a stay.

Judicial economy is best served by a stay. If the case is allowed to proceed and Plaintiff is granted leave to amend his Complaint now, it may be necessary for him to amend his Complaint yet again if the Second State Court Action strikes down some or all of the current Board structure as unconstitutional or if the voters of North Carolina approve the proposed constitutional amendment and adopt the structure of the New Board. It wastes this Court's (and the parties') time and resources to allow this case to proceed given that Plaintiff's claims will have to evolve as matters evolve at the State level. For example, Plaintiff's proposed Amended Complaint alleges that "General Statutes 163A-2 and 163A-776 and related sections discriminate against plaintiff, an unaffiliated voter, by denying him the same opportunity as registered Democrats and Republicans to be a member of the [Board]." (Dkt. 44-1 at ¶ 43.) If the proposed constitutional amendment passes, the challenged statutory sections will no longer be controlling, and the Court and the parties will have wasted their time litigating such issues.

Without a stay, Defendants will have to defend a lawsuit that may be rendered moot, if, for example, Session Law 2018-2 is found unconstitutional

13

in the Second State Court Action. Plaintiff asks this Court to allow him to amend his Complaint so that he can then ask the Court to find Session Law 2018-2 unconstitutional. Those steps may be unnecessary if the Second State Court Action is decided first, and it is wasteful to require Defendants to go through those steps at this time. *See CIP Constr. Co. v. W. Sur. Co.*, No. 1:18CV58, 2018 WL 3520832, at *10 (M.D.N.C. July 20, 2018). The same would be true if the proposed constitutional amendment is passed given that it does not require that members of the New Board be affiliated with a given party. *See* 2018 N.C. Sess. Laws 133. Thus, if the proposed amendment is adopted by the voters, the structure will not, as currently alleged by Plaintiff, exclude unaffiliated voters. (*See, e.g.,* Dkt. 44 at ¶ 10.) Plaintiff's claims and Defendants' defense of such claims will be greatly affected by a constitutional amendment.

Plaintiff would suffer no prejudice if a stay is granted (or, perhaps more accurately, continued). Plaintiff previously acknowledged that he could not know the impact of a final decision in the First State Court Action on his claims and jointly sought a stay with the other parties. (*See* Dkt. 40 at ¶ 8.) The impact of the Second State Court Action and/or the proposed constitutional amendment is similarly unknowable, and Plaintiff, like all parties, will benefit from waiting before pursuing his claims. Moreover, Plaintiff appears to want a ruling on the constitutionality of any iteration of the Board overseeing

14

elections that does not include him, even the version that existed for over 100 years without challenge. (Dkt. 44 at ¶ 10.) Thus, it does not appear that the need for a decision is pressing.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' Motion to Stay and should deny Plaintiff's Motion to Amend Complaint as premature.

Respectfully submitted this 10th day of September, 2018.

    NELSON MULLINS RILEY & SCARBOROUGH LLP

    By:/s/ D. Martin Warf
    Noah H. Huffstetler, III
    N.C. State Bar No. 7170
    D. Martin Warf
    N.C. State Bar No. 32982
    4140 Parklake Avenue, Suite 200
    Raleigh, NC 27612
    Telephone: (919) 877-3800
    noah.huffstetler@nelsonmullins.com
    martin.warf@nelsonmullins.com

*ATTORNEYS FOR Defendant-Intervenors PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives*

## CERTIFICATE OF COMPLIANCE

Counsel for Defendant-Intervenors certify that pursuant to LR 7.3(d) of the Local Civil Rules, the foregoing Memorandum is fewer than 6,250 words (including the body of the brief, headings, and footnotes, but excluding the caption, signature blocks, certificate of service, this certificate of compliance, and exhibits) as reported by the word-processing software.

By: /s/ D. Martin Warf
D. Martin Warf

# CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of September, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Michael Crowell
1011 Brace Lane
Chapel Hill, NC 27516
lawyercrowell@gmail.com

*Plaintiff*

James Bernier, Jr.
Special Deputy Attorney General
jbernier@ncdoj.gov

*Counsel for Defendants Bipartisan State Board of Elections and Ethics Enforcement, and its members, in their official capacities*

Amar Majmundar
Senior Deputy Attorney General
Olga Vysotskaya de Brito
Special Deputy Attorney General
Brian Rabinovitz
Special Deputy Attorney General
amajmundar@ncdoj.gov
ovysotskaya@ncdoj.gov
brabinovitz@ncdoj.gov

*Counsel for Defendant Governor Roy Cooper in his official capacity*

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ D. Martin Warf
D. Martin Warf
martin.warf@nelsonmullins.com