IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL CROWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV515 |
| | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| ROY COOPER, Governor of North | ) | |
| Carolina, in his official | ) | |
| capacity only, BIPARTISAN | ) | |
| STATE BOARD OF ELECTIONS AND | ) | |
| ETHICS ENFORCEMENT, CHAIR, | ) | |
| BIPARTISAN STATE BOARD OF | ) | |
| ELECTIONS AND ETHICS | ) | |
| ENFORCEMENT, in official | ) | |
| capacity only, and MEMBERS, | ) | |
| BIPARTISAN STATE BOARD OF | ) | |
| ELECTIONS AND ETHICS | ) | |
| ENFORCEMENT, in their official | ) | |
| capacity only, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PHILIP E. BERGER and | ) | |
| TIMOTHY K. MOORE, | ) | |
| | ) | |
| Intervenor Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Michael Crowell, an attorney proceeding pro se and a registered, unaffiliated voter, filed this action challenging the composition of the North Carolina State Board of Elections and Ethics Enforcement (the "State Board"). Plaintiff

contends that the statutes governing selection of State Board members, and consequently the selection of county board of elections members, unconstitutionally exclude unaffiliated voters. Specifically, Plaintiff contends in his complaint, (Complaint ("Compl.") (Doc. 1)), that N.C. Gen. Stat. §§ 163A-2 and 163-30 (now codified at § 163A-766) unfairly discriminate against unaffiliated voters by precluding their service on the State Board and county boards of elections, in violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Compl. (Doc. 1) ¶¶ 28-37.)

Plaintiff moves to amend his complaint in light of recent changes to N.C. Gen. Stat. § 163A-2. (Mot. to Amend Complaint ("Pl.'s Mot. to Am.") (Doc. 44).) Intervenor Defendants Philip E. Berger and Timothy K. Moore, in their official capacities as President Pro Tempore of the North Carolina Senate and Speaker of the North Carolina House of Representatives, respectively (collectively, the "Intervenor Defendants"), oppose the motion to amend, (Doc. 49), and separately move to stay this case pending the final resolution of Cooper v. Berger, 18 CVS 3348 (Wake Cty. Super. Ct.), a state action addressing the state constitutionality of N.C. Gen. Stat. § 163 et seq. (Doc. 47.)

Intervenor Defendants have filed a brief in support of their motion to stay, (Mem. in Supp. of Mot. for Stay ("Defs.' Mem.") (Doc. 48)), Plaintiff has filed a response opposing the proposed stay, (Pl.'s Resp. Opposing Mot. for Stay ("Pl.'s Resp. Br.") (Doc. 55)), and Intervenor Defendants have replied, (Reply in Supp. of Mot. for Stay ("Defs.' Reply Br.") (Doc. 58.)) Defendants Chair of the Bipartisan State Board of Elections and Ethics Enforcement and Members of the Bipartisan State Board of Elections and Ethics Enforcement (collectively, the "State Defendants"), neither consent nor object to Plaintiff's motion to amend the complaint. (Doc. 46 at 2.) Defendant Roy Cooper, in his official capacity as Governor of North Carolina, did not respond to Plaintiff's motion to amend within twenty-one days and therefore is deemed not to contest the motion pursuant to Local Rule 7.3(k). For the following reasons, this court finds that Plaintiff's motion to amend, (Doc. 44), should be denied without prejudice and that this matter should be stayed pending the final resolution of Cooper v. Berger, 18 CVS 3348 (Wake Cty. Super. Ct.), and any subsequent legislative action.

I. **HISTORY**

The predecessor to N.C. Gen. Stat. § 163 et seq., N.C. Gen Stat. § 138B et seq., was designed to "consolidate the functions

of elections, campaign finance, lobbying, and ethics under one state agency by creating" an eight-member State Board jointly appointed by the Governor and state legislature and consisting of members from the two largest political parties. 2016 N.C. Sess. Laws 2016-125 (S.B. 4). The law was passed on December 16, 2016, and signed by then-Governor Pat McCrory. Id.; see also Cooper v. Berger, 16 CVS 15636 (Wake Cty. Super. Ct. Mar. 17, 2017) ("Cooper I"). Governor-elect Roy Cooper ("Cooper") challenged Session Law 2016-125 on December 30, 2016, the law was preliminarily enjoined, and a three-judge Superior Court panel ultimately found the proposed statute unconstitutional because it restricted Cooper's ability to faithfully execute the laws and violated the North Carolina state constitution's separation of powers. Cooper I, 16 CVS 15636, at 2–3, 16.

The state legislature then passed Session Law 2017-6 on April 25, 2017, again establishing a bipartisan State Board but slightly modifying the selection process. See 2017 N.C. Sess. Laws 2017-6 (S.B. 68). Session Law 2017-6 created an eight-member State Board, with four members coming from the political party with the highest number of registered voters and the other four coming from the party with the second-highest number of registered voters; the Governor would select all members from

lists submitted by each party chair. Id. The statutes enacted by Session Law 2017-6, specifically N.C. Gen. Stat. §§ 163A-2 and 163A-766[1], are the subject of Plaintiff's claims here. (Compl. (Doc. 1) at 10.)

Cooper subsequently challenged Session Law 2017-6 as violating the separation of powers, but the three-judge Superior Court panel initially dismissed that action for lack of jurisdiction. See Cooper v. Berger, 17 CVS 5084 (Wake Cty. Super. Ct. Oct. 31, 2017) ("Cooper II"). The North Carolina Supreme Court reversed, found the law unconstitutional, and remanded the case for an entry of judgment. Cooper v. Berger, 370 N.C. 392, 421–22, 809 S.E.2d 98, 116 (N.C. Jan. 26, 2018) ("Cooper III"). On March 14, 2018, this court stayed this case upon the parties' joint request until entry of a final judgment in Cooper II. (Doc. 41.) The three-judge panel in Cooper II entered final judgment on March 5, 2018, holding § 163A-2

---

[1] N.C. Gen. Stat. § 163-30, which governs the county boards of elections, is now codified at N.C. Gen. Stat. § 163A-766. See 2017 N.C. Sess. Laws 2017-6 (S.B. 68). Per Plaintiff's proposed amended complaint, the most recent legislative actions did not substantively alter the county board selection process. ("Pl.'s Mot. to Am.") (Doc. 44) Ex. 1 at 8.)

unconstitutional. (Doc. 48-2 at 4.)[2] The Cooper II judgment was not appealed. (Doc. 42.)

On February 13, 2018, shortly after the North Carolina Supreme Court's decision in Cooper III, the state legislature passed a new act reconstituting the State Board. See 2018 N.C. Sess. Laws 2018-2 (H.B. 90). Session Law 2018-2, which amended § 163 et seq., created a nine-member State Board appointed by the Governor that includes four members from the political party with the highest number of affiliates, four members from the party with the second-highest number of affiliates, and one member not registered with either party. Id. Cooper again challenged the revised statute under the separation of powers. Cooper v. Berger, 18 CVS 3348 (Wake Cty. Super. Ct. Oct. 16, 2018) ("Cooper IV"). On October 16, 2018, the same three-judge panel found Session Law 2018-2 unconstitutional and permanently enjoined the provisions of Session Laws 2017-6 and 2018-2 that established the State Board and its selection process. Id. at 22. The panel suspended its order "until the results of the

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

November 2018 elections are certified by the State Board."³ Id. The Cooper IV panel thereafter stayed its October 16, 2018 order through December 3, 2018, as jointly requested by the parties. (Doc. 58-3 at 2.) Intervenor Defendants have appealed the Cooper IV order to the North Carolina Court of Appeals, (see Doc. 58-1), but do not appear to have applied for an emergency stay.

The state legislature placed a constitutional amendment establishing a bipartisan eight-member State Board on the November 6, 2018 ballot.⁴ See 2018 N.C. Sess. Laws 2018-133 (H.B. 4). The amendment was to become law if approved by a majority of voters. Id. According to preliminary election results, that proposed amendment was defeated in the November 6, 2018 general election.⁵ It currently appears that, absent further action by the Superior Court or a higher court, the relevant portions of

---

³ Cooper appointed a State Board pursuant to the criteria in Session Law 2018-2, and this board supervised the 2018 general election. See Cooper IV, 18 CVS 3348, at 22.

⁴ The state legislature re-wrote this amendment after a Superior Court panel held that the initial version was misleading and did not sufficiently describe its impact on the Governor's powers. See Cooper v. Berger, 18 CVS 9805 (Wake Cty. Super. Ct. Aug. 21, 2018).

⁵ See, e.g., Lynn Bonner, NC voters reject constitutional amendments limiting governor's power; 4 others pass, Raleigh News & Observer, Nov. 7, 2018, available at https://www.newsobserver.com/news/politics-government/article221039145.html.

Session Laws 2017-6 and 2018-2 will no longer be in effect once the stay automatically expires on December 3, 2018, and North Carolina will no longer have a State Board at this time.

Plaintiff seeks to amend his complaint to address the changes to § 163A-2 enacted by Session Law 2018-2. (Pl.'s Mot. to Am. (Doc. 44).) According to the pleadings filed with this court, Plaintiff's amended complaint would challenge Session Law 2018-2 on the same grounds previously asserted — namely, that Session Law 2018-2 unconstitutionally discriminates against unaffiliated voters in violation of the Fourteenth Amendment and deprives those voters of their First Amendment rights. (See id., Ex. 1.)

In summary, Plaintiff seeks to amend his complaint to challenge the federal constitutionality of a state statute, after a state court has declared the statute unconstitutional under the state constitution but temporarily suspended enforcement of its ruling.

## II. **ANALYSIS**

### A. **Legal Standard**

Intervenor Defendants argue that a stay is appropriate under the Landis doctrine, (Defs.' Mem (Doc. 48) at 12), due to the separate state and federal proceedings each challenging

Session Law 2018-2 and the resulting version of § 163A-2.[6] "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). As the Fourth Circuit has explained:

> [The power to grant a discretionary stay pending state court proceedings under Landis] in the district courts is well recognized. It is not, however, without limitation. . . . [P]roper use of this authority calls for the exercise of judgment which must weigh competing interests and maintain an even balance. The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.

Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983) (internal quotation marks omitted) (quoting Landis, 299 U.S. at 254–55). Courts consider the following factors when deciding whether to stay proceedings: "the interests of judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential

---

[6] This court does not accept Intervenor Defendants' contention that the proposed stay should be evaluated under the Colorado River doctrine. (Defs.' Mem. (Doc. 48) at 11–12.) The instant case implicates only federal constitutional issues, and Plaintiff's interest as an independent voter is not adequately represented in or protected by the ongoing state court proceedings. See Gannett Co. v. Clark Constr. Grp., Inc., 286 F.3d 737, 741 (4th Cir. 2002) (describing the "exceptional circumstances" needed to apply the Colorado River doctrine).

prejudice to the non-moving party in the event of a stay." Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC, 141 F. Supp. 3d 428, 452 (M.D.N.C. 2015).

Plaintiff agrees that this court may "analyze defendant-intervenors' motion under Landis and related case law concerning the court's inherent authority to control its docket." (Pl.'s Resp. Br. (Doc. 55) at 7.) Plaintiff argues that the Landis factors dictate against the issuance of a stay because the state court proceedings described above do not fundamentally impact the basis for Plaintiff's claims here, denying the stay will not burden Intervenor Defendants, and further delay will prejudice Plaintiff and other independent voters. (Id. at 7–13.) This court finds the Landis factors suggest that a stay is appropriate.

### B. Judicial Economy

The interests of judicial economy weigh against hearing claims that are not ripe for adjudication or allege no present injury. First, it does not appear to this court that Plaintiff's claims are ripe. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (citations and internal

quotation marks omitted). The statute that Plaintiff challenges, N.C. Gen. Stat. § 163A-2 (as most recently amended by Session Law 2018-2), has been enjoined by a three-judge panel of a state court. See Cooper IV, 18 CVS 3348, at 22. That decision is stayed until December 3, 2018, but effective thereafter. (Doc. 58-3 at 3.) The purpose of this stay, according to the parties' joint request in Cooper IV, was to permit fair and effective administration of the 2018 midterm elections without causing undue difficulties that might arise from immediately enjoining the State Board authorizing statutes.[7] (Doc. 58-2 at 3.)

As of December 3, 2018, the challenged statute will be enjoined and no longer in force. The existence of a State Board, and the criteria governing its membership, are entirely contingent on future actions — either a decision from the North Carolina Supreme Court in Cooper IV or the passage of a new statute by the North Carolina state legislature. No matter how likely Plaintiff believes it is that future action will again result in a bipartisan board that unconstitutionally excludes

---

[7] The Supreme Court has stated (in relation to an invalid redistricting plan) that, absent unusual circumstances "such as where an impending election is imminent and a State's election machinery is already in progress," courts should take "appropriate action to insure that no further elections are conducted under the invalid plan." Reynolds v. Sims, 377 U.S. 533, 585 (1964).

independent voters, his claims are not presently ripe. Plaintiff admits as much, stating that "[t]here is no way for this court to anticipate such future mischief and how it might affect this case." (Pl.'s Resp. Br. (Doc. 55) at 10.)

Second, in the absence of a ripe issue, this court has no general authority to direct legislation. "(T)he federal courts established pursuant to Article III of the Constitution do not render advisory opinions." Golden v. Zwickler, 394 U.S. 103, 108 (1969) (alterations in original). A present, live controversy must exist to "avoid advisory opinions on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48 (1969). Ruling on the substantive merits of Plaintiff's challenge now, when the current statute is only temporarily in effect and clearly without force after December 3, 2018, would arguably constitute an improper advisory opinion to the North Carolina state legislature.

The absence of a ripe claim would ordinarily require dismissal. See, e.g., W. Va. Highlands Conservancy, Inc. v. Babbitt, 161 F.3d 797, 801 (4th Cir. 1998) (dismissing claims as not ripe due to ongoing agency proceedings). However, this court finds a stay appropriate here due to the high likelihood of future legislative action. (See Defs.' Reply Br. (Doc. 58) at 7

(stating that "there is no need to proceed with Plaintiff's claims in this suit unless and until . . . the scope of any possible legislative change is more certain.").)

### C. **Prejudice to the Non-moving Party**

This court finds substantial "potential prejudice to the non-moving party in the event of a stay" in this case, which would ordinarily dictate against granting the stay. Yadkin Riverkeeper, 141 F. Supp. 3d at 452. Plaintiff filed this lawsuit "in June 2017 in the hope of affecting election administration in 2018." (Pl.'s Resp. Br. (Doc. 55) at 13.) Plaintiff has already been deprived of that opportunity. Intervenor Defendants conducted the 2018 midterm elections under § 163A-2, without any decision as to the statute's federal constitutionality. In this court's view, Plaintiff has suffered collateral damage from the ongoing legislative-judicial gridlock over the State Board selection process.

The continued postponement of this case risks further prejudice to Plaintiff. Plaintiff correctly observes that each iteration of the State Board potentially excludes independent voters, and this court is sympathetic to Plaintiff's frustration with continual amendments that evade substantive judicial review. Plaintiff should not be indefinitely denied his right to

be heard in federal court simply because Intervenor Defendants choose to pass numerous similar iterations of a statutory scheme. See Norman v. Reed, 502 U.S. 279, 287-88 (1992) (stating that "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if we should fail to resolve the constitutional issues that arose" in the most recent election); see also Murphy v. Hunt, 455 U.S. 478, 481 (1982) (holding that claims are not moot when the alleged deprivation of constitutional rights is "capable of repetition, yet evading review") (citation omitted).

### D. **Hardship to the Moving Party**

The hardship and inequity to the moving parties, Intervenor Defendants Berger and Moore (in their official capacities), is limited but weighs in favor a stay. Were this court to presently address the merits of Plaintiff's claims, Intervenor Defendants might be forced to defend a statute with no legal effect as of December 3, 2018. This would be a waste of time and resources, especially if Intervenor Defendants were then required to change course and defend a new, slightly different statute. This court notes that it considers the prejudice to the non-moving party (Plaintiff) to outweigh any hardship to Intervenor Defendants because Intervenor Defendants' actions and related state court

proceedings have prolonged this case. However, this court ultimately finds a stay necessary given potential future legislation affecting Plaintiff's claims.

## III. **CONCLUSION**

Despite the prejudice to Plaintiff by continued delays in this case, Plaintiff's claims are not currently ripe due to the pending Cooper IV order enjoining the relevant statutes. This court thus finds that a stay is the only appropriate action.

This court will therefore stay this case. In the event of either (1) a ruling from the North Carolina Court of Appeals or Supreme Court in Cooper v. Berger, 18 CVS 3348, that stays or otherwise lifts the Superior Court's October 16, 2018 order, or (2) further legislative action with respect to the State Board, the stay will automatically dissolve and Plaintiff shall have twenty days from the date of such action to amend the complaint. If neither a higher state court nor the North Carolina state legislature has acted within four months of the issuance of this order, the stay will dissolve and all parties shall file briefs within twenty days suggesting the proper course of action.

This court further notes to the parties that it remains concerned about the potential for constitutional injury that is "capable of repetition, yet evading review."

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend the complaint, (Doc. 44), is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Intervenor Defendants Philip E. Berger and Timothy K. Moore's motion to stay, (Doc. 47), is **GRANTED** and this case is hereby **STAYED.**

**IT IS FURTHER ORDERED** that, upon either a ruling from the North Carolina Court of Appeals or Supreme Court in <u>Cooper v. Berger</u>, 18 CVS 3348, that stays or otherwise lifts the Superior Court's October 16, 2018 order, or further legislative action regarding the State Board, the stay will automatically dissolve and Plaintiff shall have twenty days from the date of such action to amend the complaint.

**IT IS FURTHER ORDERED** that, if neither a higher state court nor the North Carolina state legislature has acted regarding the State Board within four months of the issuance of this order, the stay will automatically dissolve and the parties are directed to proceed as described herein.

This the 16th day of November, 2018.

/s/ William L. Osteen, Jr.
United States District Judge