IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF NORTH CAROLINA

| | |
|---|---|
| MICHAEL CROWELL, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| ROY COOPER, Governor of North | ) |
| Carolina, *in his official capacity only*; | ) |
| ROBERT B. CORDLE, Chair, State | ) |
| Board of Elections, *in his official capacity* | ) |
| *only*; STELLA ANDERSON, JEFF | ) Case No. 1:17-cv-515-WO-JEP |
| CARMON III, DAVID C. BLACK, and | ) |
| KEN RAYMOND, members, State | ) |
| Board of Elections, *in their official* | ) |
| *capacities only*; | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| PHILLIP E. BERGER, President Pro | ) |
| Tempore, North Carolina Senate, and | ) |
| TIMOTHY K. MOORE, Speaker, North | ) |
| Carolina House of Representatives, *in* | ) |
| *their official capacities only*: | ) |
| | ) |
| *Defendant-Intervenors* | ) |

## AMENDED COMPLAINT

This is a declaratory judgment action to have the court declare

unconstitutional North Carolina law that excludes unaffiliated voters from

being appointed to the State Board of Elections and the 100 county boards of

election. Plaintiff is an unaffiliated voter who is excluded from serving on those

1

boards in violation of his constitutional rights to equal protection, free speech, and freedom of association.

## PARTIES

1. Plaintiff Michael Crowell is an adult citizen and registered voter in Carrboro in Orange County, North Carolina.

2. Defendant Roy Cooper is the governor of North Carolina. Under North Carolina General Statutes § ("G.S.") 163-19(a) he appoints all five members of the State Board of Elections ("State Board"), and pursuant to G.S. 163-30(a) appoints the chair of each of the 100 county boards of election. He is sued in his official capacity only.

3. Defendant Robert B. Cordle is the chair of the State Board which is responsible for appointing four of the five members of the 100 county boards of election. Mr. Cordle is registered as affiliated with the Democratic Party and was appointed to the State Board as a nominee of the state chair of the Democratic Party. He is sued in his official capacity only.

4. Defendants Stella Anderson, Jeff Carmon III, David C. Black, and Ken Raymond are members of the State Board which is responsible for appointing four of the five members of each of the 100 county boards of election. Defendants Anderson and Carmon are registered as affiliated with the Democratic Party and were appointed to the State Board as nominees

2

of the state chair of the Democratic Party. Defendants Black and Raymond are registered as affiliated with the Republican Party and were appointed to the State Board as nominees of the state chair of the Republican Party. The members of the State Board are sued in their official capacity only.

5. Defendant-Intervenor Phillip E. Berger is President Pro Tempore of the North Carolina Senate, and Defendant-Intervenor Timothy K. Moore is the Speaker of the North Carolina House of Representatives. They have intervened, in their official capacities only, without opposition.

## JURISDICTION AND VENUE

6. This action arises under 42 U.S. Code § 1983 based on the denial under color of state law of rights secured by the United States Constitution.

7. This court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matter in controversy arises under the United States Constitution.

8. Venue is proper in this court under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in this district, and each defendant conducts business in the district.

9. This court has authority to enter a declaratory judgment and to provide injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

10. This court has personal jurisdiction over defendants because each is a citizen of North Carolina.

## FACTS

11. The State Board of Elections was established in 1901 and from that time until 2017 consisted by five members appointed by the governor from voters affiliated with the Democratic and Republican parties. Members could be nominated only by the state chairs of those political parties, and neither party was permitted to have more than three members of the board at one time.

12. Following the election of Democrat Roy Cooper as governor in November 2016 the Republican-majority General Assembly began a series of attempts to restructure the state and county election boards. The first iteration was enacted in December 2016 as Session Law 2016-125. That act would have replaced the State Board of Elections with a "Bipartisan State Board of Elections and Ethics Enforcement comprised of eight members." Four of the eight members were to be appointed by the governor, four by the General Assembly, to be evenly balanced between Democrats and Republicans, from nominations made by those political parties.

13. The eight-member board was never appointed after the implementation of Session Law 2016-125 was enjoined by a three-judge panel of Wake County Superior Court in *Cooper v. Berger*, No. 16 CVS 15636 ("*Cooper v.*

4

*Berger I*"), a lawsuit in which the governor asserted that the act violated separation of powers by denying him the power to appoint a majority of the State Board, an executive agency.

14.     In response to the decision in *Cooper v. Berger I*, in April 2017 the General Assembly enacted Session Law 2017-6, again providing that the State Board was to be comprised of eight members. This time, all eight were to be appointed by the governor, four Democrats and four Republicans, from nominations by the state chairs of those political parties. No members were appointed, though, as Governor Cooper again challenged the constitutionality of the act in *Cooper v. Berger*, No. 17 CVS 5084 ("*Cooper v. Berger II*"), asserting that the new act still violated separation of powers by denying him the power to appoint a majority of the State Board.

15.     On January 26, 2018, the North Carolina Supreme Court upheld the governor's challenge to the composition and appointment of the State Board in *Cooper v. Berger*, 370 N.C. 392 (2018), and remanded the case to superior court for further proceedings.

16.     While *Cooper v. Berger II* was on remand, the legislature in February 2018 tried yet another approach, enacting Session Law 2018-2 to provide for a nine-member State Board appointed by the governor. Four members were to be Democrats appointed from nominations submitted by the state chair of the Democratic Party and four were to be Republicans appointed

5

from nominations by the state chair of the Republican Party. Those eight members then were to meet and nominate two candidates to the governor from voters not affiliated with the Democratic or Republican party; the governor was required to appoint one of those two.

17.    Although Governor Cooper appointed the nine State Board members pursuant to S.L. 2018-2 in March 2018, he once again challenged the composition and appointment of the State Board, and other aspects of the 2017 and 2018 acts, in Wake County Superior Court in *Cooper v. Berger*, No. 18 CVS 3348 (*"Cooper v. Berger IV"*). Yet again, on October 16, 2018, the court ruled in the governor's favor, declaring S.L. 2018-2 unconstitutional and enjoining its enforcement. Because of the pending election the court stayed its injunction until results of the November 2018 election could be certified.

18.    The superior court subsequently extended its stay based on pending election disputes but on December 27, 2018, denied a final request for a stay and allowed the nine-member State Board to be dissolved on December 28th pursuant to the court's October decision.

19.    In June 2018, before the superior court held the nine-member board unconstitutional, the General Assembly enacted Session Law 2018-117 proposing a constitutional amendment to allow an eight-member "bipartisan" state board, all appointed by the General Assembly, half from

recommendations of legislative leaders of one party and half from recommendations of leaders of the other party. When the wording of the proposed amendment was challenged in court, the General Assembly in August 2018 enacted a new version in Session Law 2018-133 and placed it on the ballot for November. The amendment was defeated in the November 2018 referendum; approximately 2.2 million votes were cast against the amendment and just under 1.4 million in favor.

20.  Following the decision in *Cooper v. Berger IV* and voters' rejection of the constitutional amendment, the General Assembly abandoned its attempts to restructure the State Board. In December 2018 the legislature enacted Session Law 2018-146 returning the State Board to its pre-2016 configuration, i.e., a five-member board appointed by the governor from nominations submitted by the state chairs of the Democratic and Republican parties. The members must be affiliated with those parties and no more than three may be from the same party. The act took effect January 31, 2019, and the provisions on appointments to the State Board are codified once again in G.S. 163-19.

21.  From mid-March 2018 when Governor Cooper appointed the nine members to the State Board while still challenging its constitutionality, until December 28, 2018, the board was comprised of four Democrats, four Republicans, and one unaffiliated voter who was nominated by those eight

other board members. The single unaffiliated board member, who served for nine months until the board was dissolved, is the only person not affiliated with the Democratic or Republican party who has ever served on the State Board in its 118-year history.

22.    The current five members of the State Board were appointed by Governor Cooper from nominations submitted by the state chairs of the Democratic and Republican parties. Three members are registered as Democrats and two as Republicans.

23.    County boards of elections were established in 1901 and from that time until 2017 consisted of three members appointed by the State Board of Elections from nominations by the state chairs of the Democratic and Republican parties, with neither party to have more than two members on a board.

24.    In each of the acts from 2016 to December 2018 altering the State Board — S.L. 2016-125, S.L. 2017-6, and S.L. 2018-2 — the General Assembly also expanded county boards of election to four members, still to be appointed by the State Board from nominations by the Democratic and Republican parties, with two Democrats and two Republicans on each county board.

25.    In March 2018 the nine-member State Board appointed four members to each county board pursuant to S.L. 2018-2. For each of the 100 county boards two of the appointees were Democrats and two Republicans.

26.   Session Law 2018-146 expanded county boards of election from four to five members with the fifth member to be appointed by the governor and to serve as chair. Pursuant to G.S. 163-30, as revised and recodified by Session Law 2018-145, § 25.(a), two of the four appointments to each county board by the State Board must be Democrats and two must be Republicans. The current statute does not specify that the governor must appoint a Democrat or Republican as chair.

27.   The State Board has appointed four members to each of the 100 county boards of election. The members all were appointed from nominations submitted by the state chairs of the Democratic and Republican parties. Two of the four members of each board are registered as Democrats and two as Republicans.

28.   On April 9, 2019, Governor Cooper completed his appointments of the 100 chairs of the county boards of election. Defendant Cooper's 100 appointments are all Democrats. Not a single unaffiliated voter was appointed to a county board by the governor.

29.   Governor Cooper's office maintains a website which lists boards and commissions to which the governor appoints members. The website encourages applications for appointment to those offices. The 100 county board of election chair offices were never listed on the site, however, nor was it possible through that site to apply for the position.

9

30.    Upon information and belief, defendant Cooper consulted only with Democratic Party officials on his appointments of the 100 county board chairs and considered only registered Democrats.

31.    There had never been an unaffiliated voter on the State Board of Elections until 2018. The single unaffiliated member of the State Board who served for approximately nine months while the nine-member board was in effect is the only unaffiliated voter known to ever serve on the State Board. That single unaffiliated member was nominated by other State Board members who owed their appointments to the Democratic and Republican parties and were advised by their parties whom to nominate.

32.    There is currently no unaffiliated voter on any of the 100 county boards of elections, and there is no unaffiliated voter known to have ever served on a county board in the 118-year history of county boards.

33.    All current election board members in the state are registered as Democrats or Republicans. There are 505 state and county board members in the state; 303 are Democrats, 202 are Republicans. Not a single board member is unaffiliated.

34.    The State Board supervises all elections in the state and is the sole state agency with that authority. Its responsibilities include appointment of members of county boards of elections; appointment of the executive director of the State Board; training and supervision of all county boards of

10

election; hearing complaints against county board members and removing members; investigation of election law violations; determination of the form and content of ballots, instruction sheets, pollbooks, and other election documents; approval of voting machines; certification of notices of candidacy; approving precinct lines and polling places and times and places for one-stop absentee voting; preparation of abstracts of election results; assisting county boards in election-related litigation; determining appeals on challenges to candidates' qualifications; hearing and deciding election protests; promulgating administrative rules for the conduct of elections; and declaring the winners of elections and ordering new elections.

35.    County boards of elections are responsible for conducting all elections in the state's 100 counties and are the sole local agencies with that authority. The county board appoints the county director of elections; appoints all precinct officials, including chief judges, judges and assistants; hears complaints against precinct officials and removes officials; investigates election irregularities and nonperformance of duties by election officials; establishes precincts; determines polling places and locations and hours for one-stop absentee voting; reviews and determines the sufficiency of petitions and nomination papers; hears and decides challenges to voters' eligibility and candidates' qualifications; provides for ballots, voting booths, ballot boxes, voting machines and other equipment and materials used to

conduct elections; publishes notices of elections; canvasses election returns and completes abstracts and reports results to the State Board; hears election protests and recommends decisions to the State Board; and otherwise oversees all elections within its county.

36. Voter registration by party has changed dramatically in North Carolina in recent years, most noticeably in the number of unaffiliated voters. In November 1976 the state had 2,553,717 registered voters, of whom 1,840,827 or 72 percent were Democrats; 601,897 or 24 percent were Republicans; and only 106,940 or 4 percent were unaffiliated. Ten years later, in November 1986, the percentages had changed little. At that time there were 3,080,990 registered voters, of whom 2,114,536 or 69 percent were Democrats; 836,726 or 27 percent were Republicans; and only 129,728, still 4 percent, were unaffiliated. In both 1976 and 1986 there was no county in which unaffiliated voters outnumbered either Democrats or Republicans.

37. As of April 6, 2019, there were 6,608,630 registered voters in the state. Of that total, 2,464,058 or 37 percent were affiliated with the Democratic Party; 1,992,578 or 30 percent affiliated with the Republican Party; and 2,112,605 or 32 percent registered as unaffiliated. The Libertarian Party claimed 36,726 voters or .5 percent of registered voters; the Green Party 1,271 or .02 percent; and the Constitution Party 1,392 or .02 percent.

38.   As of April 6, 2019, there were more unaffiliated voters registered than either Democrats or Republicans in 11 of the state's one hundred counties, including the state's second most populous county, Wake. The counties with more unaffiliated voters than either Democrats or Republicans were Camden, Currituck, Dare, Henderson, Jackson, New Hanover, Onslow, Polk, Transylvania, Wake, and Watauga.

39.   As of April 6, 2019, there were more unaffiliated voters registered than Republicans in an additional 40 counties. Those counties were: Anson, Bertie, Bladen, Buncombe, Caswell, Chatham, Chowan, Columbus, Cumberland, Durham, Forsyth, Gates, Granville, Greene, Guilford, Halifax, Haywood, Hertford, Hoke, Hyde, Jones, Lee, Madison, Martin, Mecklenburg, Northampton, Orange, Pasquotank, Perquimans, Person, Pitt, Richmond, Robeson, Scotland, Swain, Tyrrell, Vance, Warren, Washington, and Wilson.

40.   As of April 6, 2019, there were more unaffiliated voters registered than Democrats in another 31 counties. Those counties were: Alexander, Ashe, Avery, Brunswick, Burke, Cabarrus, Caldwell, Carteret, Catawba, Cherokee, Clay, Davidson, Davie, Gaston, Iredell, Johnston, Lincoln, Macon, McDowell, Mitchell, Moore, Pender, Randolph, Rowan, Rutherford, Stanly, Stokes, Surry, Union, Wilkes, and Yadkin.

41.    To summarize the state's current voter registration, unaffiliated voters are either the most numerous or second most numerous category of registered voters in 82 of the state's 100 counties. In only 18 of the 100 counties are unaffiliated voters third in registration.

42.    As of April 6, 2019, there were 41,023 voters registered as unaffiliated in plaintiff's home county, Orange, and only 14,623 voters registered Republican; unaffiliated voters were 39 percent of the total registered voters in the county and Republicans only 14 percent.

43.    As of April 6, 2019, in all of the four counties with the highest voter registration — Mecklenburg, Wake, Guilford and Durham — unaffiliated voters outnumbered Republicans, and in Wake unaffiliated voters outnumbered both Democrats and Republicans. In Mecklenburg there were over 70,000 more unaffiliated voters than Republicans; in Wake over 80,000 more; and in Durham 71,317 unaffiliated voters compared to only 25,542 Republicans.

44.    Plaintiff Crowell has been registered to vote in North Carolina continuously since 1970, and has been licensed to practice law since 1971. He was registered as a Democrat until about 1994 when he changed his registration to unaffiliated and has been so registered since then.

45.    Plaintiff Crowell is qualified to serve on a board of elections. When registered as a Democrat he served as a precinct registrar in Orange

14

County. He was the author of the 1982, 1984 and 1988 editions of <u>The Precinct Manual</u>, a handbook for election officials distributed by the State Board of Elections to county election board members and precinct officials throughout the state; has taught at training conferences for county board members sponsored by the State Board; has organized and taught in conferences for county election directors; has lectured on election law issues to superior court judges; has made presentations on election law to city and county attorneys, county commissioners, city council members, and other local officials; has testified in federal court as an expert witness in North Carolina election law; has represented numerous clients — Democrats, Republican, and unaffiliated — in hearings before the State Board of Elections; has represented the State Board itself; has advised and represented numerous county boards of election, boards of county commissioners, city councils, and school boards on election matters; has organized and taught in programs on voting rights and redistricting; was a member of the General Assembly's Election Law Reform Commission in 2000 and 2001; drafted or assisted in drafting various articles of Chapter 163 of the North Carolina General Statutes (the state election law), and rules of the State Board of Elections; has represented clients — Democrats, Republicans, Libertarians, Reform Party, and unaffiliated — in election matters in state superior court, both North Carolina appellate courts, all

three federal district courts in North Carolina, and in the federal Fourth and District of Columbia circuit courts of appeal; and was lead counsel in a number of significant election and voting rights cases including *Moore v. Knightdale Bd. of Elections*, 331 N.C. 1 (1992); *Brannon v. North Carolina State Bd. of Elections*, 331 N.C. 335 (1992); *James v. Bartlett*, 359 N.C. 260 (2005); *Faires v. State Bd. of Elections*, 368 N.C. 825 (2016); *McGhee v. Granville County, N.C.*, 860 F.2d 110 (4th Cir. 1987); *Hines v. Mayor and Town Council of Ahoskie*, 998 F.2d 1266 (4th Cir., 1993); and *Lewis v. Alamance County, N.C.*, 99 F.3d 600 (4th Cir. 1996).

## FIRST CLAIM FOR RELIEF

### Denial of Equal Protection
### Fourteenth Amendment, United States Constitution

46. The allegations of paragraphs 1 through 45 are incorporated by reference.

47. Plaintiff sues defendants in their official capacities only and seeks declaratory and injunctive relief, challenging the constitutionality of state law concerning appointments to the State Board of Elections and county boards of election.

48. The Fourteenth Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

16

49.   The right to vote is a fundamental right and includes the right to participate fully in all aspects of elections.

50.   In North Carolina the State Board and the county boards of election alone are fully responsible for administering elections and for assuring that all voters and candidates, including those voters and candidates not affiliated with the Democratic or Republican Party, are treated equally and fairly.

51.   North Carolina statutes discriminate against plaintiff, an unaffiliated voter, by denying him the same opportunity as registered Democrats and Republicans to be a member of the State Board of Elections or a county board of elections and participate equally in the administration of elections in North Carolina.

52.   Governor Cooper, acting under color of state law, discriminates against plaintiff, an unaffiliated voter, by considering and appointing only Democrats to county boards of election, denying plaintiff the opportunity to participate equally in the administration of elections in North Carolina.

53.   The same discrimination against plaintiff and other unaffiliated voters has existed in each iteration of the election boards enacted by the General Assembly since they were first created in 1901 and exists in the current configurations of the boards.

54.    State law excluding unaffiliated voters from serving on election boards has the effect and is intended to entrench the established Democratic and Republican political parties and is not rationally related to a legitimate governmental interest, nor does it serve a compelling state interest.

55.    Plaintiff is otherwise qualified to serve on a board of elections and is discriminated against solely because of his political affiliation.

## SECOND CLAIM FOR RELIEF

### Denial of Free Speech and Freedom of Association
### First Amendment, United States Constitution

56.    The allegations of paragraphs 1 through 55 are incorporated by reference.

57.    Plaintiff sues defendants in their official capacities only and seeks declaratory and injunctive relief, challenging the constitutionality of state law concerning appointments to the State Board of Elections and county boards.

58.    The First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, provides that no state make any law "abridging the freedom of speech," which right includes the right of freedom of association.

59.    North Carolina statutes abridge plaintiff's freedom of speech, and deny his freedom of association, by requiring as a condition of serving on an

elections board that he affiliate with either the Democratic or Republican party despite his independent political beliefs.

60.     The restriction on plaintiff's right to freedom of speech and association is severe in excluding him entirely from participation in election boards' administration of elections. In North Carolina the State Board and the county boards of election alone are responsible for administering elections and for assuring that all voters and candidates, including those voters and candidates not affiliated with the Democratic or Republican Party, are treated equally and fairly.

61.     State law excluding unaffiliated voters from serving on election boards has the effect and is intended to entrench the established Democratic and Republican political parties and is not rationally related to a legitimate governmental interest.

62.     The restriction on plaintiff's right to freedom of speech and association is based solely on his political beliefs and affiliation.

63.     The same abridgement of the rights of plaintiff and other unaffiliated voters has existed in each iteration of the election boards since their creation in 1901 and exists in the current configuration of the boards.

64.     Plaintiff is otherwise qualified to serve on a board of elections and is denied the right to do so only because of his refusal to accept affiliation with the Democratic of Republican party.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that this court:

1. Declare unconstitutional and void, in violation of the Fourteenth and First Amendments, North Carolina law concerning appointment of the State Board of Elections and county boards of elections, including state statutes that restrict appointments to voters registered as Democrats or Republicans or that limit appointments to voters recommended by those political parties;

2. Enjoin defendants from enforcing state law on appointment of the State Board of Elections and county boards of election, and specifically enjoin defendants Cooper and the State Board and its members, respectively, from appointing only Democrats and Republicans to the State Board and the county boards of election;

3. Order defendants Cooper and the State Board and its members, respectively, to consider and appoint unaffiliated voters to the State Board and to the 100 county boards of election in proportion to their percentage of all registered voters in the state;

4. Award plaintiff his costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and other applicable law; and

5. Grant such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED, this 15th day of April 2019.


/s/ Michael Crowell
Michael Crowell
NC State Bar No. 1029
1011 Brace Lane
Chapel Hill, NC 27516
919-812-1073
lawyercrowell@gmail.com

*Attorney representing himself*

## CERTIFICATE OF SERVICE

I certify that on April 15, 2019, I electronically filed this Amended Complaint with the Clerk of Court using the CM/ECF system and have verified that such filing was sent electronically using the CM/ECF system to the following:

Paul M. Cox
Special Deputy Attorney General
N.C. Department of Justice
PO Box 629
Raleigh, NC 27602
pcox@ncdoj.gov
*Counsel for defendants Robert B. Cordle, Chair, State Board of Elections, and Stella Anderson, Jeff Carmon III, David C. Black, and Ken Raymond, members of the State Board of Elections*

D. Martin Warf
Noah H. Huffstetler, III
Nelson Mullins Riley & Scarborough LLP
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
noah.huffstetler@nelsonmullins.com
martin.ward@nelsonmullins.com
*Counsel for defendant-intervenors Berger and Moore*

Brian D. Rabinovitz
Special Deputy Attorney General
Amar Majmundar
Special Deputy Attorney General
Olga E. Vysotskaya de Brito
Special Deputy Attorney General
NC Department of Justice
PO Box 629
Raleigh, NC 27602
brabinovitz@ncdoj.gov
amajmundar@ncdoj.gov
ovysotskaya@ncdoj.gov
*Counsel for defendant Cooper*

This 15th day of April 2019.

/s/ Michael Crowell
Michael Crowell, Attorney
NC State Bar No. 1029
1011 Brace Lane
Chapel Hill, NC 27516
919-812-1073
lawyercrowell@gmail.com

*Attorney representing himself*