IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-CV-00515

MICHAEL CROWELL,

    Plaintiff,

v.

ROY COOPER, Governor of North Carolina, in his official capacity only; ROBERT B. CORDLE, Chair, State Board of Elections, in his official capacity only; STELLA ANDERSON, JEFF CARMON III, DAVID C. BLACK, and KEN RAYMOND, members, State Board of Elections, in their official capacities only;

    Defendants,

and

PHILIP E. BERGER, President Pro Tempore, North Carolina Senate, and TIMOTHY K. MOORE, Speaker, North Carolina House of Representatives, in their official capacities only,

    Defendant-Intervenors.

## MEMORANDUM IN SUPPORT OF
## CONSENT MOTION TO WITHDRAW INTERVENTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate and Timothy K. Moore, in his official capacity as Speaker of the North

Carolina House (collectively, the "Defendant-Intervenors") submit this memorandum in support of their Consent Motion to Withdraw Intervention.

## **INTRODUCTION**

Recent changes to the law in North Carolina regarding the make-up and structure of the State Board of Elections (the "Board of Elections") and the State Ethics Commission (the "Ethics Commission") have been largely driven by state court litigation between the Governor and the General Assembly. That litigation has dramatically changed the circumstances at issue in this action and allegations asserted by Plaintiff since the time Plaintiff first filed his original Complaint and since Defendant-Intervenors first sought and were permitted to intervene in this action. Based on the change in circumstances and a review of the present allegations, Defendant-Intervenors no longer believe that their intervention is necessary for a robust defense of the law Plaintiff now challenges. All named defendants have moved to dismiss the Amended Complaint. (*See* Dkt. 66). This joint defense—and the fact that the Governor is not challenging the session law now challenged by Plaintiff— indicates that Defendant-Intervenors' interests will be adequately represented. Moreover, as the case is still in its early phases, Plaintiff will not suffer prejudice if Defendant-Intervenors' are allowed to withdraw. As such,

good cause exists to grant Defendant-Intervenors' Motion to Withdraw Intervention.

## STATEMENT OF THE NATURE OF THE MATTER AND STATEMENT OF FACTS

**A.    Session Law 2017-6**

In his original Complaint, Plaintiff challenged the constitutionality of Session Law 2017-6, which reorganized the Board of Elections and the Ethics Commission into the eight-member Bipartisan State Board of Elections and Ethics Enforcement (the "Bipartisan State Board").  (*See* Dkt. 1).  Governor Roy Cooper also filed suit against the same law in state court, raising a facial constitutional challenge under the North Carolina Constitution. (*See* Dkt. 9-1).  Ultimately, on January 26, 2018, the North Carolina Supreme Court, in a 4-3 decision, issued its opinion holding that those provisions of Session Law 2017-6 concerning the membership of and appointments to the Bipartisan State Board violated the North Carolina Constitution.  *See Cooper v. Berger*, 370 N.C. 392, 422, 809 S.E.2d 98, 117 (2018); (Dkt. 39-1).  The case was remanded to the trial court and, on March 5, 2018, the trial court entered its Final Judgment declaring portions of Session Law 2017-6 (specifically, the portions constituting N.C. Gen. Stat. § 163A-2) void and of no effect and permanently enjoining § 163A-2. (*See* Dkt. 59, pp.5-6) (summarizing history of litigation).

B. **Session Law 2018-2**

Shortly thereafter, on March 16, 2018, North Carolina enacted Session Law 2018-2, which amended § 163A-2 and established a nine-member Bipartisan State Board. *See* 2018 N.C. Sess. Laws 2. On March 13, 2018, even before Session Law 2018-2 actually became law, Governor Cooper filed a new action challenging a portion of the new law as well as what he referred to as "unamended portions" of Session Law 2017-6. Defendant-Intervenors' Motion to Dismiss and the Governor's Motion for Summary Judgment regarding Session Law 2018-2 were argued before the Superior Court on July 26, 2018. By order entered on October 16, 2018, the Superior Court denied Defendant-Intervenors' Motion to Dismiss and granted the Governor's Motion for Summary Judgment, concluding that Session Law 2018-2 was unconstitutional.[1] (*See* Dkt. 59, pp.6-7).

C. **The Challenged Session Law**

On December 27, 2018, Session Law 2018-146, which established a new State Board of Elections, became law. Under Session Law 2018-146, the new State Board of Elections has a structure like the State Board of Elections that was in place prior to the creation of the State Bipartisan Board; the State

---

[1] In light of the November 2018 election, the Superior Court's Order was stayed so that the nine-member Bipartisan State Board could continue its service through the election.

4

Board of Elections has five members appointed by the Governor from lists of nominees provided by the State party chairs of the two largest political parties. County boards of election consist of five members, four appointed by the State Board of Elections and one appointed by the Governor. Session Law 2018-146 at § 4.3(a). Governor Cooper has not challenged Session Law 2018-146. Rather, as set forth in the Amended Complaint, Governor Cooper has appointed the five members of the State Board of Elections and has made his appointments to the county boards of elections. (Dkt. 63 at ¶¶ 22, 28).

Based on the challenges in the state courts and the changes to the laws affecting the State Bipartisan Board and the State Board of Elections, this case was stayed (more than once). (Dkts. 41, 59). Plaintiff was granted leave to amend his Complaint, (Dkt. 59), and finally did so on April 15, 2019, (Dkt. 63). The Amended Complaint names new defendants (the members of the State Board of Elections under Session Law 2018-146) and challenges a different law (Session Law 2018-146) than the original Complaint. (Dkt. 63).

### D. Defendant-Intervenors

On August 16, 2017, Defendant-Intervenors moved to intervene in this action in large part because all of the then-named defendants (including Governor Cooper) were represented in this action by the North Carolina Attorney General. (*See* Dkt. 9). And, as set forth above, at the time this action

was filed, Governor Cooper was challenging Session Law 2017-6 (the same law that Plaintiff challenged in his original Complaint) such that Governor Cooper's position regarding the constitutionality of the law was adverse to Defendant-Intervenors' position. Defendant-Intervenors' Motion to Intervene was granted. (Dkt. 20).[2]

Due to these changed circumstances and the significant changes in Plaintiff's allegations (and even the named parties), Defendant-Intervenors no longer believe their involvement or separate counsel are necessary to a robust defense of Plaintiff's claims and ask this Court to allow the withdrawal of their intervention.

## QUESTIONS PRESENTED

**SHOULD DEFENDANT-INTERVENORS BE ALLOWED TO WITHDRAW THEIR INTERVENION BASED ON CHANGED CIRCUMSTANCES?**

## ARGUMENTS AND AUTHORITIES

In September 2017, Defendant-Intervenors were allowed to intervene to defend the claims raised by Plaintiff in his original Complaint. (Dkt. 20). That original Complaint named the Governor, the Bipartisan State Board, and the

---

[2] In granting the Motion to Intervene, the Court referenced the lack of objection to intervention. (Dkt. 20 at 1). Defendant-Intervenors note that Plaintiff and the members of the State Board of Elections have again indicated that they do not object to allowing Defendant-Intervenors to withdraw from this case.

6

Bipartisan State Board's members as defendants and alleged that Session Law 2017-6 was unconstitutional under the United States Constitution. (Dkt. 1). Much has changed since the filing of the original Complaint and the granting of Defendant-Intervenors' Motion to Intervene. As set forth above:

- Session Law 2017-6 was struck down as unconstitutional under the North Carolina Constitution by the North Carolina Supreme Court and a three-judge panel of the Wake County Superior Court.

- The structure of the Bipartisan State Board as established in Session Law 2017-6 was amended by Session Law 2018-2.

- Session Law 2018-2 was struck down as unconstitutional by a Superior Court panel thereby rendering the latest iteration of the Bipartisan State Board unconstitutional.

- Session Law 2018-146 became law, reinstating a State Board of Elections with a structure like that in place before the passage of Session Law 2017-6.

In filing his Amended Complaint, Plaintiff had to add new defendants (members of the State Board of Elections) for a Board that did not even exist at the time of his original Complaint. He also had to scrap all of his claims regarding Session Law 2017-6—which was addressed by North Carolina state courts—and make new allegations challenging a new law, Session Law 2018-146. These significant changes essentially render Plaintiff's Amended Complaint an entirely new action. And, while Defendant-Intervenors had reason to participate in the defense of prior session laws, the significant

7

change in legal and factual circumstances renders their continued, separate defense of the current law unnecessary.

From the time Plaintiff initiated this action until the passage of Session Law 2018-146, due to the Governor's challenges to the session laws establishing the Bipartisan State Board, that board was always under a cloud of inter-governmental litigation between the executive and legislative branches. The Governor's and Defendant-Intervenors' interests in that litigation were represented by separate counsel such that Defendant-Intervenors could not be comfortable that their interests would be adequately represented in this action by the same counsel representing the Governor. Thus, Defendant-Intervenors moved to intervene under both Rule 24(a) (intervention of right) and Rule 24(b) (permissive intervention). (Dkt. 9).

Under intervention of right,[3] the court considers whether the prospective intervenor's interest is adequately represented by existing parties to the litigation. *See Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991) (examining grounds for intervention of right). In seeking to intervene back in August 2017, Defendant-Intervenors were concerned that, since the Attorney General was representing the Governor, who wanted to strike down Session

---

[3] The Court ultimately granted the motion under Rule 24(b) and noted that it did not separately consider whether Defendant-Intervenors were entitled to intervene as of right. (Dkt. 20).

8

Law 2017-6 as unconstitutional rather than defend the constitutionality of the law, the interests of Defendant-Intervenors might not be adequately represented. (Dkt. 9 at 15-18).

Now, however, Governor Cooper is not challenging the structure of the State Board of Elections. After Session Law 2018-146 became law, Governor Cooper appointed the members of the State Board of Elections and the county boards of election as set forth in the law. As such, Defendant-Intervenors believe that the Attorney General will not be torn between competing interests and that the named defendants can robustly represent the state's defense of the law. (*Compare* Dkt. 66, 67 (all counsel with the Attorney General's Office joining to request dismissal of Plaintiff's action) *with* Dkt. 31, 34, and 38 (highlighting differences of opinion and separate counsel based on state court litigation).

As such, Defendant-Intervenors seek to withdraw from this case based in large part on the change of circumstances that led to first exercising the right to intervene.[4] *See, e.g., Hedley v. ABHE & Svoboda, Inc.*, No. CIV.A.

---

[4] Defendant-Intervenors submit that an analogy can be drawn between the relief sought in their Motion to Withdraw Intervention and a motion made to reconsider or revise the Order Granting Motion to Intervene made pursuant to Rule 54 of the Federal Rules of Civil Procedure. The Fourth Circuit has held

> "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: '(1)

9

RDB-14-2935, 2015 WL 4626880, at *1 (D. Md. July 31, 2015) (allowing the United States to withdraw after having intervened in an action). Although Defendant-Intervenors were appropriately permitted to intervene in 2017 based on the circumstances at the time, the claims in Plaintiff's Amended Complaint can now be sufficiently defended without Defendant-Intervenors as parties.

Due to the fact that this case is still in the early stages (e.g., Defendants responded to the Amended Complaint just prior to the filing of Defendant-Intervenors' Motion to Withdraw Intervention), Plaintiff will not be prejudiced if Defendant-Intervenors are allowed to withdraw at this time. Further, as an arm of the State of North Carolina, Defendant-Intervenors, even if not

---

    a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Carlson*, 856 F.3d at 325 (internal quotation marks and alteration omitted). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Id.* (internal quotation marks omitted).

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018). The significant changes in circumstances that have occurred since the filing of this action are like the discovery of different evidence. The Court and all of the parties now have before them new information such that, while allowing intervention under the original Complaint was proper, allowing the withdrawal of such intervention is also appropriate.

10

parties to the action, will be subject to a judgment regarding the constitutionality of Session Law 2018-146.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenors ask the Court to allow the withdrawal of their intervention and their withdrawal from this case.

Respectfully submitted this the 13th day of May, 2019.

    NELSON MULLINS RILEY & SCARBOROUGH LLP

    By: /s/ D. Martin Warf
        Noah H. Huffstetler, III
        N.C. State Bar No. 7170
        D. Martin Warf
        N.C. State Bar No. 32982
        4140 Parklake Avenue, Suite 200
        Raleigh, N.C. 27612
        Telephone: (919) 329-3800
        noah.huffstetler@nelsonmullins.com
        martin.warf@nelsonmullins.com

*ATTORNEYS FOR* Defendant-Intervenors *PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives*

# CERTIFICATE OF COMPLIANCE

Counsel for Proposed Defendant-Intervenors Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives, certifies that pursuant to LR 7.3(d) of the Local Civil Rules, the foregoing Memorandum is fewer than 6,250 words (excluding certificate of service, this certificate of compliance, and exhibits) as reported by the word-processing software, including footnotes and citations.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ D. Martin Warf
     D. Martin Warf

# CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of May, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Brian D. Rabinovitz
Special Deputy Attorney General
Amar Majmundar
Special Deputy Attorney General
Olga E. Vysotskaya de Brito
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, N.C. 27602
brabinovitz@ncdoj.gov
amajmundar@ncdoj.gov
ovysotskaya@ncdoj.gov

*Counsel for Defendant Roy Cooper, Governor of North Carolina, in his official capacity only*

Michael Crowell
1011 Brace Lane
Chapel Hill, N.C. 27516
lawyercrowell@gmail.com

*Plaintiff, Attorney representing himself*

Paul Cox
Special Deputy Attorney General
Alexander McC. Peters
Chief Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, N.C. 27602
pcox@ncdoj.gov
apeters@ncdoj.gov

*Counsel for Defendants State of North Carolina, Bipartisan State Board of Elections and Ethics Enforcement, and chair and members of the Bipartisan State Board of Elections and Ethics Enforcement*

13

Case 1:17-cv-00515-WO-JEP   Document 69   Filed 05/13/19   Page 13 of 14

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ D. Martin Warf
Noah H. Huffstetler, III
N.C. State Bar No. 7170
D. Martin Warf
N.C. State Bar No. 32982
4140 Parklake Avenue, Suite 200
Raleigh, N.C. 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
noah.huffstetler@nelsonmullins.com
martin.warf@nelsonmullins.com

*ATTORNEYS FOR* Defendant-Intervenors *PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives*